IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SCOTT LEE GRAVES,                              *
        Petitioner,
    v.                                         *    CIVIL ACTION NO. RWT-06-2036

LISA HOLLINGSWORTH, et al.,                    *
        Respondents.
                                   ***

## MEMORANDUM OPINION

The Violent Crime Control and Law Enforcement Act of 1994 amended 18 U.S.C. § 3621(b) to require the U.S. Bureau of Prisons ("BOP") to "make available appropriate substance abuse treatment for each prisoner the BOP determines has a treatable condition of substance addiction or abuse." It added a section providing for incentives for prisoners to participate in a Residential Drug Abuse Program ("RDAP"), including the possibility of an early release. Subsection 3621(e)(2)(B) provides that:

> The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a [drug] treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

In implementing this provision, the BOP initially adopted the statutory definition of "crime of violence" found under 18 U.S.C. § 924(c)(3).[1] Subsection 3621(e)(2)(B) was codified under 28 C.F.R.§ 550.58. Section 550.58 specifies three prerequisites for early release eligibility: the inmate must have been sentenced to a term of imprisonment for a nonviolent offense; must have a substance

---

[1] 18 U.S.C. § 924(c)(3) defines "crime of violence" as: [a]n offense that is a felony and--

   (A)   has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
   (B)   that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

abuse problem; and must successfully complete a residential drug abuse treatment program while incarcerated. Subsequent revisions to the regulation omit any reference to § 924(c)(3).

Petitioner, a federal prisoner housed at FCI-Cumberland, filed this petition for writ of habeas corpus under 28 U.S.C. § 2241 on August 4, 2006, alleging that Respondents denied him due process when they determined without "timely notices or any written documents" that he would be required to repeat Phase II of the RDAP. (Paper Nos. 1 and 4). He further alleges that exhaustion of his administrative remedies is futile because "the time it would take to do so would be futile to the immediate relief [to which he] is entitled." ( Id.) Petitioner seeks injunctive relief directing the BOP allow him to be "tested on Phase II accomplished studies and performance and once he passes the test, properly promoted to Phase IIII." (Id.) He also asks that the Court order the BOP to adhere to his "already reserved release [date]." (Id.) Upon review of the Petition and Supplement thereto, Respondent's show cause response, and Petitioner's oppositions thereto,[2] the Court shall deny the Petition without hearing.

## I. Factual Background

There is no dispute that Petitioner is serving a thirty-seven month sentence for escape from the Salvation Army Community Correction Center in violation of 18 U.S.C. § 751(A). (Paper No. 10, Ex. 1). He began to participate in RDAP on January 3, 2006. (Id., Ex. 2). On that same date

---

2  Petitioner has filed several Motions seeking expedited relief: "Ex Parte Special Motion for Administrative Preliminary Injunction" (Paper No. 3); "Ex Parte Special Motion to Amend" (Paper No. 8); "Motion for Default Judgment" (Paper No. 12); and "Motion for Disposition of Pro Se Complaint and Request for TRO" (Paper No. 16). Because the Court finds that Petitioner is not entitled to relief on his underlying Petition he is not entitled to any of the expedited or injunctive relief he requests in his numerous filings. Accordingly, the Motions shall be denied.
 Petitioner's "Opposition" contains a request for appointment of counsel. (Paper No. 14). The request shall be denied. Petitioner is able to adequately articulate his claims for relief and the issues presented are not unduly complex. See Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984).
 Petitioner also filed a "Motion" opposing the time set out in the Court's original show cause order directing Respondents to answer the Petition. (Paper No. 7). The Motion is denied.

he signed FCI Cumberland's RDAP Unit Code of Conduct. (Id., Attachment B). During January, 2006, administrative notes regarding Petitioner's poor conduct in the RDAP counseling sessions were generated. (Id., Declaration of Matason, Attachment C and D). Petitioner signed an Agreement to Participate in a BOP Residential Drug Abuse Treatment Program on February 6, 2006.[3] (Id., Ex. 2, Declaration of Matason, Attachment E).

On March 6, 2006, the FCI-Cumberland treatment team met to review the progress of Phase I participants in RDAP. (Id., Attachment G). While the Treatment Team recommended that Petitioner progress to the next phase of treatment, areas of concern regarding Petitioner's progress were noted. (Id.).

On May 12, 2006, Petitioner was issued a Performance Concern Memo by the Treatment Team stating that Petitioner had "lost focus on his treatment issues..." and that "...for him to progress through the stages of change, he will need to engage himself fully in treatment." The team agreed to re-evaluate Petitioner in thirty days. (Id., Attachment H). At the follow-up review, conducted on June 6, 2006, the Drug Abuse Treatment Specialist found that Petitioner's behavior "has shown observable regression in these areas [criminal image, objectivity, and humility] since his last review. (Id., Attachment I).

Dr. Matason, Drug Abuse Program Coordinator, stated in a memo dated July 24, 2006, that Petitioner would be required to repeat Phase 2 of the RDAP.[4] (Id., Attachment J). Dr. Matason stated the rationale for requiring repetition of Phase 2 of the RDAP: as "[Petitioner] struggles with a grandiose view of himself, which significantly interferes with his ability to accept his role as

---

[3] The Agreement was not signed until after Petitioner had begun treatment in the RDAP because he had previously signed an Agreement while incarcerated at FCI-Hazelton. (Id.)

[4] This information was reported to Petitioner on July 10, 2006. (Paper Nos. 1 and 4).

3

treatment participant." (Id., Ex. 2, Declaration of Dr. Matason, Attachment J). Because of this view of himself, Dr. Matason further stated, "[Petitioner] will continue to take the victim's stance and claim that treatment staff retaliate against him." (Id.)  Dr. Matason also stated that "[Petitioner] believes that the terms of treatment are best decided by him and that he is the best judge of his overall progress in treatment.  It is these errors that will continue to halt him in treatment...[he has been] advised that his continued resistance to treatment and preoccupation with utilizing the legal system to further his treatment would result in his removal from the system."  (Id.)

At Petitioner's 180-day review on July 26, 2006, the Drug Abuse Treatment Specialist recommended that Petitioner work on focusing on his substance abuse and criminal history rather than substituting secondary issues as the focus of his concern.  The review memo further described Petitioner's demeanor throughout the program as "uncaring, grandiose, vindictive, dishonest and manipulative" and noted that he "attempted to intimidate peers" during meetings. (Id., Ex. 2, Declaration of Matason, Attachment K).

In a September 11, 2006, memo drafted by Petitioner's Drug Abuse Treatment Specialist and signed by Petitioner on September 17, 2006, his progress through the program is described as follows: "while [Petitioner] appears at times to embrace treatment, his behavior outside of the treatment and after hours suggests that he is not applying treatment concepts and practicing a new way of thinking and behaving." (Id.)  The memo also stated that Petitioner was "unwilling to take responsibility for his actions" and in "not assuming full responsibility, he has focused on excuses and not change."  (Id.)

4

Petitioner successfully completed Phase II of RDAP on his second time through but was expelled from RDAP on October 17, 2006. (Paper No. 14). Petitioner claims that his expulsion from the program was in retaliation for his having filed these legal proceedings.[5]

On August 17, 2006, Petitioner filed an Administrative Remedy regarding the decision to have him repeat Phase II of the RDAP. His request was denied. On September 15, 2006, he filed an appeal to the Regional Office of the Warden's decision. At the time of filing of the instant case, the response to the appeal was not yet due, and Petitioner had not yet exhausted his administrative remedies. (Id., Ex. 1, Declaration of Brown, Attachment B). Petitioner maintained that exhaustion of his administrative remedies would be futile. (Paper No. 1 and 4). Despite Petitioner's voluminous filings with the Court, it is not clear, as of the date of the signing of this Memorandum Opinion, whether Petitioner's remedies have now been exhausted.

## II Analysis

**A.    Administrative Remedies**

Before a petitioner may file a petition seeking habeas relief in federal court,  he  must exhaust each claim presented to the federal court through all available administrative remedies. *See* 28 U.S.C. §2241; U.S. v. Westmoreland, 974 F. 2d 736, 737 (6th Cir. 1992); U.S. ex. Rel. Sanders v. Arnold, 535 F. 2d 848, 850 (3rd Cir. 1976) (federal prisoner must exhaust available administrative remedies before seeking habeas corpus relief).  In the instant case, Petitioner acknowledges that he failed to exhaust his administrative procedures before filing suit.  Assuming, without deciding, that Petitioner's administrative remedies remain unexhausted, the instant case is subject to dismissal.

---

5    Petitioner's claim of retaliation regarding his removal from the RDAP shall not be considered here.  If Petitioner believes he has suffered a constitutional violation by his removal from the program he is free to file a civil rights complaint pursuant to Bivens v. Six Unknown Agents, 403 U.S. 388 (1999).

Petitioner's claim that exhaustion would be futile because he would be prejudiced if his claim was found meritorious is unavailing. Because neither party has updated the Court as to the status of Petitioner's administrative proceedings, the Court will assume that administrative remedies have now been exhausted and Petitioner has been unsuccessful in obtaining the relief requested.

**B.     Discretion of BOP**

Under 18 U.S.C. § 3621(b), the BOP was delegated authority to administer its drug abuse treatment programs. United States v. Jackson. 70 F.3d 874, 877-78 (6th Cir. 1995). A reduction in an inmate's term of imprisonment is within the discretion of the BOP. Lopez v. Davis, 531 U.S. 230, 241 (2001) ("[w]hen an eligible prisoner successfully completes the drug treatment, the Bureau thus has the authority, but not the duty, both to alter the prisoner's conditions of confinement and to reduce his term of imprisonment."); Wottlin v. Fleming, 136 F.3d 1032, 1035 (5th Cir. 1998) ("Section 3621(e)(2)(B) explicitly leaves sentence reductions to the discretion of the BOP."); Tasby v. Pratt, 2002 WL 1160071 (N.D. Tx. 2002) ("decision to exclude [prisoners that had a firearms sentence vacated by Bailey] from consideration for early release is a valid exercise of the Bureau's discretion."). An inmate's eligibility for participation in the RDAP Program, the determination of whether an inmate has successfully completed the program, and the amount of reduction of sentence earned by successful completion of the program, if any, are all matters left to the discretion of the BOP.

BOP Program Statement 5220.10 (October 9, 1997) vests the Drug Abuse Treatment Coordinator with the authority to make decisions regarding removal of inmate from the RDAP Program.

> The drug abuse treatment coordinator may remove an inmate from the program based upon disruptive behavior related to the program. Ordinarily, staff shall provide the inmate with at least one warning prior to removal.

(Paper No. 10, Ex. 2 Matason Declaration, Attachment M). Petitioner asserts that he was never notified of inadequacies in his treatment progress. However, the record is replete with evidence that Petitioner failed to make adequate progress through the program. Rather than expel Petitioner from the program in July of 2006, he was simply required to repeat a portion of the program and redouble his efforts regarding his treatment plan. This decision clearly rests within the discretion of the BOP and the RDAP program coordinator. The Court finds no constitutional or statutory violation committed by the BOP in its decision to have Petitioner repeat a phase of the RDAP program. Under existing case law, the actions of Respondents represent a permissible exercise of the BOP's discretion.

**C.    Due Process**

By virtue of a valid criminal conviction and his subsequent legal confinement, a prisoner loses his expectation of liberty. Meachum v. Fano, 427 U.S. 215, 224 (1976). In order to invoke pre-deprivation procedural due process protections, a prisoner must first establish that he has been subjected to "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U. S. 472, 484 (1995). The Constitution itself does not create a protected liberty interest in the expectation of early release. Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U. S. 1, 7 (1979); see also Jago v. Van Curen, 454 U.S. 14, 18 (1981) (mutually explicit understanding that inmate would be paroled does not create liberty interest). There is no protected liberty interest in the discretionary early release for completing the RDAP program pursuant to 18 U.S.C. § 3621(c). See e.g. Cook v. Wiley, 208 F.3d 1314, 1322-23

7

(11th Cir. 2000); <u>Venegas v. Henman</u>, 126 F.3d 760, 765 (5th Cir. 1997) <u>Jacks v. Crabtree</u>, 114 F.3d 983, 986, n. 4 (9th Cir. 1997); <u>Fonner v. Thompson</u>, 955 F. Supp. 638, 642 (N.D. W.Va. 1997).

Petitioner's contention that Respondents violated their own procedural guidelines in making him repeat a portion of the RDAP does not state an independent federal claim. <u>See</u> <u>Sandin</u>, 515 U.S. at 478-87.[6]  <u>See</u> <u>also</u> <u>Kentucky Dep't of Corrections v. Thompson</u>, 490 U.S. 454, 461-62 (1989).

### III Conclusion

The BOP's decision to have Petitioner repeat a portion of the RDAP program was not an abuse of discretion and did not violate the Due Process Clause. Accordingly, Petitioner's application for a Writ of Habeas Corpus under 28 U.S.C. § 2241 will be denied. A separate order follows.

Date: 2/21/07                                          /s/
                                          ROGER W. TITUS
                                          UNITED STATES DISTRICT JUDGE

---

6       <u>Sandin</u> notes that a prison occurrence may amount to a deprivation of a liberty interest entitled to procedural protection under the Due Process Clause of the Constitution if (1) statutes or regulations narrowly restrict the power of prison officials to impose deprivation, and (2) the liberty interest in question is one of "real substance." <u>Id.</u> at 478. Provisions that provide only procedural requirements, even if mandatory, cannot provide the basis for a constitutionally protected liberty interest.